PATRICK H. HICKS, Bar No. 004632
EMIL S. KIM, Bar No. 14894
LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, Nevada 89169.5937
Telephone: 702.862.8800
Fax No.: 702.862.8811
Email: phicks@littler.com
Email: ekim@littler.com

Attorneys for Plaintiff
AHERN RENTALS, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AHERN RENTALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MATTHEW YOUNG,<br><br>Defendant. | Case No.: 2:21-cv-02190-JAD-BNW<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

Ahern Rentals, Inc. respectfully moves this Court for a temporary restraining order on an emergency basis, along with a preliminary injunction against Defendant John Young pursuant to Federal Rule of Civil Procedure 65. This Motion is made and based on the accompanying Memorandum of Points and Authorities, the declarations and exhibits attached hereto, the pleadings and papers on file herein, as well as any oral argument that this Court may entertain. Ahern requests the court hear this Motion on an expedited basis as set forth in the accompanied declaration of Emil S. Kim, Esq. attached as **Exhibit 4**.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION AND RELIEF REQUESTED

Defendant Young is a former Outside Sales Representative of Ahern. When he was hired, Young signed a Non-Competition, Non-Solicitation and Non-Disclosure Agreement ("Agreement") intended to protect Ahern's investment of good will, confidential information and trade secrets. After 14 months of employment with Ahern, Young abruptly resigned and immediately began working at one of Ahern's direct competitors in violation of his Agreement. Ahern also has evidence that prior to resigning from his employment with Ahern, Young engaged in a deliberate effort to misappropriate Ahern Confidential Information and Trade Secrets by sending highly proprietary Company information from his Ahern email address to his personal email address. Despite Ahern's written demand that Young comply with the terms of his Agreement, he continues to violate his Agreement thereby harming Ahern.

The irreparable injury Ahern will continue to suffer if Defendant Young is not enjoined includes, but is not limited to, damage to Ahern's competitive advantage and know-how; damage to Ahern's reputation and goodwill; damage to Ahern's relationships with customers; and the potential loss of similar key sales employees vital to Ahern's operations who may be incentivized to similarly violate their agreements. This damage will only continue to grow as Ahern remains vulnerable to further breaches unless immediate action is taken. Therefore, Ahern seeks an order enjoining Defendant Young as follows:

1. from directly or indirectly, being employed or retained, or providing consulting, contracting, sales or other services that involve the same or similar services he performed at Ahern (outside equipment sales or rental) to any person or entity, including but not limited to EquipmentShare.com, Inc. ("EquipmentShare"), which competes with Ahern within a 100-mile radius of Ahern's stores which Young performed services (those Ahern stores include its Raleigh and Charlotte, North Carolina, locations);

2. from attempting to solicit from any Customer of Ahern, as defined in his Non-Competition, Non-Solicitation, and Non-Disclosure Agreement at ¶ 2.3;

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

3. from encouraging any employee of, or exclusive consultant to, Ahern to terminate his or her employment with Ahern or to become employed or retained as a consultant by a company other than Ahern;

4. to turn over to Ahern, and cease any use of, any of Ahern's documents (including all copies), tangible information, and tangible data to the extent he is in possession of, or has access to, such confidential information. Young shall abide by the confidentiality obligations of his Agreement and is enjoined and prohibited from using or divulging any of Ahern's confidential or trade secret information; and

5. from removing, altering, erasing, deleting or destroying (1) any computer and electronic storage device in his possession, custody, or control; (2) any of Ahern's documents or information; (3) any property of Ahern; and (4) any records, reports, notes, compilations, or other recorded matter, and copies or reproductions thereof, relating to Ahern's business or customers.

## II. STATEMENT OF FACTS

### A. About Ahern Rentals

Ahern is a Nevada corporation and is headquartered in Las Vegas, Nevada. *See* Declaration of Michael Vawter, Jr.[1] ("Vawter Decl."), attached hereto as **Exhibit 1** at ¶ 3. Ahern has more than 90 locations across the United States in over 30 states and also has international operations. (*Id.*) Ahern provides rental equipment, such as heavy construction equipment, forklifts, booms, hydraulic scissors, other high reach equipment, and also offers sales of new and used equipment. (*Id.* at ¶ 4.) Ahern serves customers in many sectors including construction, industrial, residential, utilities, municipalities, conventions, and entertainment/events. (*Id.*) The industry is extremely competitive, and Ahern works diligently to protect its contracts, its goodwill, its confidential information and its trade secrets. (*Id.*) Ahern expends considerable resources and effort to identify, train, and develop its employees, its business with potential clients, and market its brand and foster its goodwill. (*Id.* at ¶ 5.)

[1] Ahern attaches the Vawter Declaration, which was prepared and filed in the action in the Eighth Judicial District – Clark County, where the action was originally initiated prior to Young's removal of the matter to this Court.

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

**B. Young's Employment with Ahern and Access to Ahern's Proprietary Information and Customers**

Ahern hired Defendant Young on or about August 26, 2019, as a salaried, exempt Outside Sales Representative at Ahern's Raleigh, North Carolina location. (E1. 2 at ¶ 6.) In this key role, Young was the face of Ahern to its customers and potential customers in the market. (*Id.*) The heavy equipment rental industry is extremely competitive and Ahern's success in this business is dependent in part on its ability to service and develop relationships with its clients. (*Id.* at ¶ 7.) Business relationships and goodwill are equally as important, if not more important in many cases, as price in driving customer decisions. (*Id.*)

Ahern also expends considerable resources and effort to (a) identify and solicit potential clients, (b) maintain and deepen its relationship with existing clients, (c) market its brand and foster client goodwill, and (d) develop its business. (Ex. 1 at ¶ 8.) The aforementioned information is valuable, confidential, and proprietary to Ahern, and is not generally known in the public domain. (*Id.*) This information also has significant economic value to Ahern, and would be of significant economic value to competitors in the industry. (*Id.*) Through the years, Ahern has also developed significant goodwill in the industry and the market in which Young worked on its behalf and, via his employment with Ahern, Young developed business relationships with Ahern's customers in the market in which he worked. (*Id.* at ¶ 9.) Those relationships were all built on Ahern's dime with Ahern's resources and confidential information.

As the result of his employment with Ahern and the position of trust and confidence he held with the company, Young gained access to Ahern's confidential information and trade secrets, including but not limited to, its pricing, computer programs, customer information, customer lists, price lists, sales information, and other confidential information. (Ex. 1 at ¶ 10.) Young was able to access Ahern's confidential information and trade secrets stored in Ahern's protected computer systems. (*Id.* at ¶ 11.) The information stored on these systems constitutes some of Ahern's most valuable and confidential trade secret information and Ahern takes measures to ensure it is protected. (*Id.*) Young would not have had access to such information if not for his employment with Ahern. (*Id.* at ¶ 12.)

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

Although initially based in Ahern's Raleigh, North Carolina, location, Young frequently worked with the Company's Charlotte, North Carolina, location, and also engaged in sales activities and made actual sales with numerous customers throughout North Carolina, including in Charlotte, North Carolina. (Ex. 1 at ¶ 13.)

### C. Young's Non-Competition, Non-Solicitation and Non-Disclosure Agreement With Ahern

In order to safeguard Ahern's proprietary information, customer relationships and goodwill, Ahern required Young to sign a Non-Competition, Non-Solicitation and Non-Disclosure Agreement (the "Agreement") as a condition of his initial employment. (Ex. 1 at ¶ 14.) The Agreement contains a Nevada choice of law provision and expressly states that "all disputes arising from this Agreement shall be heard and resolved solely and exclusively by a Court in the State of Nevada." *See* Non-Competition, Non-Solicitation and Non-Disclosure Agreement Employment Agreement between John Matthew Young and Ahern, a true and correct copy of which is attached hereto as **Exhibit 2** at § 8.1.

Under the Agreement, Young contractually promised, among other things:

> 2. <u>NON-COMPETITION; NON-SOLICITATION</u>
>
> 2.1. Employee covenants that during the period that he/she is employed by Company and thereafter for the 12-month period immediately following the date on which Employee's employment with Company is terminated . . . he/she will not . . . except on behalf of the Company, directly or indirectly:
>
> A. attempt in any manner to solicit from any Customer . . . business of the type performed by Company or to persuade any Customer to cease to do business or to reduce the amount of business which any such Customer has customarily done or is reasonably expected to do with Company, whether or not the relationship between such member of Company and such client was originally established in whole or in part through his/her efforts; or
>
> B. employ as an employee or engage as a consultant, any person who is then or at any time during the preceding 12 months was an employee of or exclusive consultant to Company, or persuade or attempt to persuade any employee of or exclusive consultant to Company to leave the employ of Company or to become employed as an employee or retained as a consultant by anyone other than Company.



LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

> 2.2 If the Employee's employment with the Company is terminated prior to a Change in Control . . . Employee covenants that during the period that he/she is employed by Company and thereafter for a 12-month period immediately following the Date of Termination, he/she will not . . . except on behalf of Company, directly or indirectly, be employed, retained or otherwise provide any consulting, contracting, sales or other services that are the same or similar services that Employee provided at the Company to any person or entity who or which then competes with Company to any extent within the Restricted Area.
>
> . . .
>
> 2.4. The "Restricted Area" shall consist of a 100 mile radius of any of Company's stores in or for which Employee performed services, or had management or sales responsibilities at any time during the 12-month period immediately preceding the Date of Termination and in which the Company has established customer contacts and good will.

(Ex. 2 at § 2.)

The Agreement also prohibits Young from making any and all unauthorized use or disclosure of Ahern's "Confidential Information" and "Trade Secrets" as defined Section 3 of the Agreement. (*Id.* at § 3.) Toward that end, the Agreement provides as follows:

> 3.2 Employee shall not at any time: (A) disclose any Confidential Information or Trade Secret without the express written consent of Company; (B) utilize any Confidential Information or Trade Secret for his/her own benefit, or for the benefit of any third party; or (C) remove or take personal possession of any Confidential Information or Trade Secret from Company's premises, systems, servers, or other location, physical or electronic, without the express written consent of Company. Employee acknowledges and agrees that all memoranda, manuals, reports, plans, designs, notes, records and other documents compiled or produced by him/her or made available to him/her pertaining to the business of Company and/or the Customers (whether or not the same constitutes Confidential Information or a Trade Secret), shall be and remain the property of Company, shall remain subject at all times to Company's sole discretion and control, and all originals and copies of the same shall be delivered immediately to Company on the Date of Termination or, upon request, at any other time.

(*Id*. at § 3.2.)

Pursuant to Section 3.5 of the Agreement, Young further agreed to, among other things, return to Ahern any and all documents, records, computer media, etc., containing any Confidential Information or Trade Secrets. (*Id.* at § 3.5.) Pursuant to Section 5 of the Agreement, Young also acknowledged that the aforementioned promises on his part were "the essence of" his Agreement, and that any breach by Young of these obligations would entitle Ahern to recover not only injunctive relief, but also liquidated damages in the amount of $250,000.00, costs and attorneys' fees incurred in the enforcement of the Agreement, and the imposition of a constructive trust requiring Young to pay over

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

any and all compensation he may derive from any breach of these obligation to Ahern. (*Id*. at § 5.) In return for consideration promised and provided by Ahern, including initial employment, continued employment, training, access to confidential information, good will and the substantial compensation paid to Young, he agreed to the terms of the Agreement. (Ex. 1 at ¶ 15.)

**D. Young's Resignation and Work for EquipmentShare in Breach of His Agreement**

On or about May 5, 2021, Young informed Ahern that he was resigning his employment with Ahern. (Ex. 1 at ¶ 16.) Young's last day working for Ahern was May 5, 2021. Ahern subsequently learned that Young had accepted employment with JGR Equipment Rental & Sales, LL ("JGR") in Charlotte, North Carolina. (*Id*. at ¶ 17.) As a result, Ahern wrote to both JGR and Young on May 10, 2021, informing both of Young's continuing obligations to Ahern and the Company's expectations with regard to the same. (*Id*.); (Ex. 3.)

Notably, Ahern did not object to Young's employment with JGR or demand that JGR not employ Young. (Ex. 1 at ¶ 18); May 10, 2021 Letter from Ahern to JGR attached hereto as **Exhibit 3**. On the contrary, Ahern merely asked for information regarding Young's anticipated role and duties with JGR, and sought confirmation that Young and JGR would honor Ahern's rights and Young's obligations under the Agreement. (*Id*.) Ahern did, however, expressly request that Young immediately return any and all confidential Ahern property, materials, documents and information; to the extent the same was in his possession, care, custody or control. (Ex. 1 at ¶ 19); (Ex. 3.)

Ahern subsequently learned that Young had not followed through with his employment with JGR, but had instead accepted employment with EquipmentShare.com, Inc. ("EquipmentShare") on or about May 28, 2021. (Ex. 1 at ¶ 20.) EquipmentShare is another direct competitor of Ahern and an entity that has systematically targeted Ahern sales professionals nationwide in an effort to quickly build market share without having to invest the substantial time and resources necessary to build a legitimate equipment rental business. (*Id*. at ¶ 21.)

Ahern only learned about Young's employment with EquipmentShare when the Company lost a valuable customer to Young and EquipmentShare in or around August 2021. (Ex. 1 at ¶ 22.) Concerned that Young had solicited this customer in violation of his Agreement, Ahern reached out to EquipmentShare on August 31, 2021, to inquire about Young's employment with EquipmentShare,

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

echoing the same concerns and expectations as the Company expressed in its May 10, 2021, letter to JGR and Young. (*Id.*)

EquipmentShare did not respond to Ahern's communication. (*Id.* at ¶ 23.) Instead, on October 7, 2021, Young filed suit against Ahern in Mecklenburg County, North Carolina, state court[2], seeking, among other things, declaratory and injunctive relief that would render his continuing legal obligations to Ahern null and void. (*Id.*) Young also filed a motion for injunctive relief in the North Carolina court, seeking to, among other things, enjoin Ahern from enforcing the Agreement and protecting itself from continuing irreparable harm. (*Id.*) Young's North Carolina Complaint and motion were filed in direct breach of Section 8.1 of his Agreement, which expressly provides that "any and all disputes" arising from the Agreement "shall be heard and resolved exclusively by a Court in the State of Nevada." (*Id.* at ¶ 24); (Ex. 2 at § 8.1.)

Young is currently employed by EquipmentShare as a Sales Representative, ostensibly based in Charlotte, North Carolina, and working from his home because EquipmentShare does not have an actual location in Charlotte. (Ex. 1 at ¶ 25.) Young also claims to be assigned to work from EquipmentShare's location in Ladson, South Carolina. (*Id*. at ¶ 26.) Accordingly, Young's employment with EquipmentShare is squarely within the 100-mile Restricted Territory set forth in Section 2.4 of his Agreement, given that Young routinely performed work for Ahern's Charlotte, North Carolina location, and called upon customers and completed sales for Ahern in Charlotte, North Carolina. (*Id*. at ¶ 27.) Young has also solicited and/or obtained business for EquipmentShare from his former customers while working for Ahern. (*Id*. at ¶ 28.)

Furthermore, Ahern's investigation to date has further revealed that prior to resigning from his employment with Ahern, Young engaged in a deliberate effort to misappropriate Ahern Confidential Information and Trade Secrets by sending highly proprietary Company information – including pricing reports, "screenshots" of data from Ahern's proprietary AS400 database, specific business plans and pending projects, and information regarding customer leads – from his Ahern email address to his personal, cloud-based account, johnmyoung93@gmail.com. (Ex. 1 at ¶ 29.) Young's apparent misconduct in this regard mirrors the misconduct of numerous other former Ahern sales professionals

[2] Ahern has since removed that matter into the Western District of North Carolina – Charlotte Division.

now working for EquipmentShare who likewise began emailing Ahern Confidential Information and Trade Secrets to their personal cloud accounts shortly before abruptly quitting their employment with Ahern to immediately begin working for EquipmentShare. (*Id*. at ¶ 30.)

Despite the clear notice of Young's obligations under the Agreement and Ahern's efforts to achieve Young's compliance with his restrictive covenants, Young has refused to comply, and continues to be employed by EquipmentShare. (Ex. 1 at ¶ 31.) Upon information and belief, the above misconduct by Young is merely the first of his unlawful actions to be discovered Ahern. (*Id*. at ¶ 32.) As a direct result of Young's intentional and wrongful conduct, Ahern has suffered irreparable harm and continues to suffer the same in the form of actual and threatened misappropriation of Trade Secrets and Confidential Information, damage to its reputation and goodwill, loss of current and future business opportunities, loss of market share, and damage to relationships with customers, suppliers and distributors. (*Id*. at ¶ 33.) Absent immediate, preliminary and permanent injunctive relief, Ahern has no adequate remedy at law. (*Id*. at ¶ 34.)

## III. ARGUMENT

### A. The Criteria For Injunctive Relief Exists

A party may move for a temporary restraining order to enjoin specific conduct under Federal Rule of Civil Procedure 65. "The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; it's provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *SFR Invs. Pool 1, LLC v. U.S. Bank Nat'l Ass'n as Tr. for Truman 2016 SC6 Title Tr.*, No. 3:20-cv-00604-LRH-WGC, 2020 WL 6381672, at *2 (D. Nev. Oct. 30, 2020); *Jones v. H.S.B.C.* (USA), 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)). The legal standard to obtain a temporary restraining order and a preliminary injunction is "substantially identical." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839, n. 7 (9th Cir. 2001) (overruled on other grounds by *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

A temporary restraining order may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

balance of hardships tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Sobol v. Capital Management*, 102 Nev. 444, 446, 726 P.2d 335, 337 (1986).

In considering whether a preliminary injunction is warranted, a district court also relies on the factors set forth in *Winter*. 555. U.S. at 20. However, a preliminary injunction may be issued only after "a hearing in which the defendant is given a fair opportunity to oppose the application" and sufficient time "to prepare for such opposition." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty*., 415 U.S. 423, 433 (1974).

As discussed below, Ahern can readily meet the requirements to obtain a temporary restraining order based on Defendant Young's ongoing breach of the Agreement. The Agreement is governed by Nevada law and the Nevada Supreme Court has long recognized the power to restrain a breach of a contract through injunctive relief. *Chisholm v. Redfield*, 75 Nev. 502, 507 (1959). As with noncompetition provisions, injunctive relief can also be brought for non-solicitation provisions. *See Camco, Inc. v. Baker*, 113 Nev. 512, 515 (1997).

Further, Ahern requests that such temporary restraining order be issued on the evidence provided by this Motion as a form or emergency relief until a hearing on the preliminary injunction can be issued because immediate and irreparable injury to Ahern will continue in view of Defendant Ahern's refusal to comply with the Agreement despite the aforementioned cease and desist letter and the parties' ongoing efforts to accomplish compliance. Such injury or harm includes damage to Ahern's competitive advantage and know-how; damage to Ahern's reputation and goodwill; potential damage to Ahern's relationships with customers; and the potential loss of similar key employees who are vital to Ahern's operations. This damage will only continue to grow as Young continues to work for a competitor in the Restricted Area thereby exposing Ahern and its customer relationships to further covenant breaches and solicitation unless immediate action is taken.

**1. Ahern Is Likely To Prevail On The Merits Of Its Claims**

To establish the first factor, Ahern is not required to show positively that it will prevail on the merits of its claims. It only needs to demonstrate a "fair chance of success," not an overwhelming

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

likelihood of success, on its claims in order to obtain preliminary injunctive relief. *Gilder v. PGA Tour, Inc*., 936 F.2d 417, 422 (9th Cir. 1991).

The Nevada Supreme Court has long recognized the power to restrain a breach of a contract through injunctive relief. *Chisholm v. Redfield*, 75 Nev. 502, 507 (1959). Ahern should be granted preliminary injunctive relief against Defendant Young based upon his clear breach of the obligations in the Agreement.

Noncompetition provisions are enforceable in the context of an employment relationship. NRS § 613.195. Specifically, NRS § 613.195 provides that noncompetition agreements between employers and employees are valid and enforceable if the agreement is supported by valuable consideration, does not impose a restraint greater than is required for the protection of the employer, does not impose "undue hardship,"[3] and imposes restrictions that are appropriate in relation to the valuable consideration supporting the noncompetition covenant. NRS § 613.195. "[T]he test usually stated for determining the validity of the [noncompetition] covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer."[4] *Camco v. Baker*, 113 Nev. 512 at 518 (1997), quoting *Hansen v. Edwards*, 83 Nev. 189, 191-92, 426 P.2d 792, 793 (1967).

Here, the scope of activity prohibited by the Restrictive Covenants is clearly and narrowly defined. The Restrictive Covenants prohibit Young from working as an Outside Sales Representative for competitors within the clearly defined Restricted Area (100-mile radius of the two store in which worked) and from soliciting his former Ahern customers for 12 months. The duration of the Restrictive Covenants (*i.e.*, 12 months after termination of employment excluding the period of

---

[3] "Undue hardship" has been found where an agreement prohibits **<u>all</u>** types of employment (*e.g.,* no limit on the type of work to be performed) with a competitor. *See e.g., Golden Rd. Motor Inn, Inc. v. Islam*, 132 Nev. 476, 482, 376 P.3d 151, 155–56 (2016). Ahern's Agreement with Young, and this motion only seek to prohibit Young from performing outside sales representative duties for EquipmentShare in the Restricted Area and from soliciting his former customers at Ahern, for 12 months. He can remain employed with EquipmentShare without violating the Restrictive Covenants.

[4] However, upon an employer's "action to enforce a noncompetition covenant," if the court finds the covenant is supported by valuable consideration but contains limitations that are not reasonable or impose a greater restraint than is necessary, the court "***shall revise*** the covenant to the extent necessary and enforce the covenant as revised." NRS § 613.195(5) (emphasis added).

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

ongoing violations or litigation) is, as a matter of law, reasonable. *Ellis v. McDaniel*, 95 Nev. 455, 459 (1979) (holding that a two-year duration on a restrictive covenant was a reasonable length of time); *Las Vegas Novelty v. Fernandez*, 106 Nev. 113, 120 (1990) (stating in passing that a four-year restrictive covenant does not appear overly broad or violative of public policy). Moreover, the geographical scope is also reasonable as it is limited to a 100-mile radius of any Ahern stores for "which [Young] performed services, or had management or sales responsibilities during the 12-month period immediately preceding [his termination date]" and in which Ahern has "established customer contacts and good will." Here, those two stores include Ahern's Raleigh and Charlotte, North Carolina, locations. Consequently, the Restrictive Covenants are narrowly tailored and do not impose any restraint greater than is required.

Further, Young cannot call into question the validity of his obligation not to use or disclose Ahern's Confidential Information and Trade Secrets, or the legitimacy of his obligation to return any and all such information to Ahern as set forth in the Agreement. (Ex. 2 at §§ 3, 4.2, 3.5.) Indeed, Nevada law recognizes that these very protections are appropriate and enforceable. *Traffic Control Services, Inc. v. United Rentals Northwest, Inc.*, 87 P.3d 1054, 1057 (Nev. 2004) ("Employers commonly rely upon restrictive covenants, [including] nondisclosure . . . covenants, to safeguard important business interests [because the] non-disclosure covenant limits the dissemination of proprietary information by a former employee").

In addition, Ahern has put forth irrefutable evidence that Young has breached, and continues to breach, the Restrictive Covenants of the Agreement and refuses to provide any assurance that he will cease doing so. In fact, the evidence shows that Ahern has requested that Young return Plaintiff's proprietary information, and Young has made no effort to do so. Adding insult to injury, Young's only affirmative response to Ahern's efforts to resolve this matter amicably was to file a lawsuit in North Carolina, in breach of his Agreement's forum selection clause, seeking to have a North Carolina court declare his obligations null and void.

Ultimately, Young's position with Ahern and his knowledge of sensitive information (and improper possession of Ahern's proprietary information) jeopardizes Ahern's economic interests,

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

including its advantage in the market. Even at this early juncture and without the benefit of discovery,[5] it is apparent, based on his cavalier response to Ahern's cease and desist letter and improperly filed North Carolina lawsuit[6], that he seeks to unfairly compete with Ahern in the Restricted Area and unfairly solicit Ahern customers. The evidence undeniably demonstrates Young's ongoing violation of these obligations. Given these facts, Ahern has a strong likelihood of succeeding on the merits of its claims.

### 2. Without Preliminary Relief, Ahern Will Suffer Irreparable Harm

If not enjoined, Ahern will suffer irreparable injury including but not limited to, actual and threatened misappropriation of Ahern Confidential Information and Trade Secrets, damage to Ahern's competitive advantage and know-how; damage to Ahern's reputation and goodwill; potential damage to Ahern's relationships with customers; and the potential loss of key employees who are vital to Ahern's operations and may be incentivized by Young's conduct. Indeed, on countless occasions throughout the country, EquipmentShare has employed former Ahern employees like Young to execute the same type of aforementioned unlawful actions in order to attack Ahern's business and gain market share. Thus, with the misappropriated information in the possession of both Young and EquipmentShare, the damages incurred by Ahern will only continue to grow as Ahern's confidential information, trade secrets, customer relationships and employees remain vulnerable to further breaches and solicitation.

It should also be noted that Young ***agreed*** that Restrictive Covenants are necessary and reasonable to protect the legitimate business interest of Ahern and that any violation of such provisions will cause irreparable injury to Ahern. (Ex. 2 at § 6). Young further agreed that in the event of breach of threatened breach, Ahern ***shall be entitled to specific performance and injunctive relief*** as well as liquidated damages, in addition to any other remedy which may be available in equity or law. Therefore, a TRO should be issued.

---

[5] Ahern has concurrently filed a motion seeking expedited discovery.

[6] The Agreement signed by Young provides that he consents to the personal jurisdiction of Clark County, Nevada and that "all disputes arising from the Agreement shall be heard and resolved solely and exclusively by a Court in the State of Nevada." (Ex. 2 at § 8.1).

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

**3. The Balance Of Hardships Favors Issuing A Preliminary Injunction To Maintain The Status Quo Between The Parties**

A "critical element" in determining whether injunctive relief should issue is the relative hardship to the parties. *Gilder*, 936 F.2d at 422. Young's actions are exactly what the Agreement was designed to prevent. The potential harm to Ahern is significant as Young's knowledge of sensitive Ahern information jeopardizes Ahern's economic interests by his position with its competitor, EquipmentShare. If Young is allowed to violate his contractual obligations and attempt to solicit Ahern's customers and employees using Ahern's confidential information and trade secrets, Ahern's business and its reputation could be severely and irreparably damaged and Ahern could lose goodwill and customers. Contrarily, Young suffers no harm if such relief is granted. Young can continue to perform Outside Sales Representative work for EquipmentShare (a national company) in other areas/territories outside of the Restricted Area. In view of the foregoing, the balance of equities favors the issuance of an immediate TRO.

**4. Injunctive Relief Favors The Public Interest**

When, as here, the reach of an injunction is narrow and limited only to the parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Moreover, there is a strong public policy in the State of Nevada in favor of promoting contracts that include restrictive covenant contracts. *See Hansen v. Edwards*, 83 Nev. 189 at 192 (1967) (holding that for restrictive covenants, the public has an interest in protecting the freedom of persons to contract, and in enforcing contractual rights and obligations); *General Motors LLC. v. Santa Monica Group, Inc.*, 2010 U.S. Dist. LEXIS 78711 (C.D. Cal. July 9, 2010) (public interest weighs in favor of protecting parties' contractual expectations). Thus, allowing Young to continue breaching his contractual obligations would directly undermine those policies.

**5. Security**

Fed. R. Civ. P. 65(c) provides for the court to issue a "preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or retrained."

LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

Here, a nominal bond in the amount of $200.00 is appropriate because the injunction simply prevents Young from violating the Restrictive Covenants, interfering with Ahern's customer relationships, unlawful use of Ahern's property, and does not prevent Young from working.

## IV. CONCLUSION AND RELIEF REQUESTED

As set forth above, a plaintiff seeking a TRO or preliminary injunction must establish that it is likely to succeed on the merits, is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest. *Winter*, 555 U.S. at 20. As long as the *Winter* factors are addressed, an injunction may issue where there are "serious questions going to the merits" and "a balance of hardships that tips sharply towards the plaintiff." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Ahern has clearly demonstrated these factors. Therefore, Ahern requests a TRO and injunctive relief in the form of an Order from the Court as follows:

1. Young is enjoined and prohibited from, directly or indirectly, being employed or retained, or providing consulting, contracting, sales or other services that involve the same or similar services he performed at Ahern (outside equipment sales or rental) to any person or entity, including but not limited to EquipmentShare.com, Inc. ("EquipmentShare"), which competes with Ahern within a 100-mile radius of Ahern's stores which Young performed services (those Ahern stores include its Raleigh and Charlotte, North Carolina, locations).

2. Young is enjoined and prohibited from attempting to solicit from any Customer of Ahern, as defined in his Non-Competition, Non-Solicitation, and Non-Disclosure Agreement at ¶ 2.3.

3. Young is enjoined and prohibited from encouraging any employee of, or exclusive consultant to, Ahern to terminate his or her employment with Ahern or to become employed or retained as a consultant by a company other than Ahern.

4. Within 24 hours, Young shall turn over to Ahern, and cease any use of, any of Ahern's documents (including all copies), tangible information, and tangible data to the extent he is in possession of, or has access to, such confidential information. Young shall abide by the confidentiality obligations of his Agreement and is enjoined and prohibited from using or divulging any of Ahern's confidential or trade secret information.

5. For evidence preservation purposes, Young is enjoined and prohibited from removing, altering, erasing, deleting or destroying (1) any computer and electronic storage device in his possession, custody, or control; (2) any of Ahern's documents or information; (3) any property of Ahern; and (4) any records, reports, notes, compilations, or other recorded matter, and copies or reproductions thereof, relating to Ahern's business or customers.

Dated: December 20, 2021

LITTLER MENDELSON P.C.

*/s/ Emil S. Kim*
PATRICK H. HICKS, ESQ.
EMIL S. KIM, ESQ.

Attorneys for Plaintiff
AHERN RENTALS, INC.

**PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169-5937. On December 20, 2021, I served the within document(s):

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

☒ By CM/ECF Filing – Pursuant to FRCP 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Sarah H. Negus
Brandon Gaskins
Taylor P. Festa
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Floor 47
Charlotte, NC 28202-4003

*Attorneys for Defendant*

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 20, 2021, at Las Vegas, Nevada.

*/s/ Ann Koorndyk*
Ann Koorndyk

4879-9264-0518.2 / 099283-1067