# EXHIBIT 1

EXHIBIT 1

PATRICK H. HICKS, Bar No. 004632
EMIL S. KIM, Bar No. 14894
LITTLER MENDELSON P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, Nevada 89169.5937
Telephone: 702.862.8800
Fax No.: 702.862.8811
Email: phicks@littler.com
Email: ekim@littler.com

Attorneys for Plaintiff
AHERN RENTALS, INC.

**DISTRICT COURT**

**CLARK COUNT, NEVADA**

AHERN RENTALS, INC.,

Plaintiff,

v.

JOHN MATTHEW YOUNG,

Defendant.

Case No.: A-21-844000-B

Dept. No.: 31

**DECLARATION OF MIKE VAWTER**

I hereby declare the following facts under penalty of perjury:

1. My name is Mike Vawter. I am over the age of twenty-one (21), and I am fully competent and capable in all respects to make this declaration.

2. I am the Regional Senior Vice President for Ahern Rentals, Inc.'s ("Ahern" or the "Company") Northeast Region, and in such position, I have personal knowledge of the information in this declaration.

3. Ahern is a Nevada corporation and is headquartered in Las Vegas, Nevada. Ahern has more than 90 locations across the United States in over 30 states and also has international operations.

4. Ahern provides rental equipment, such as heavy construction equipment, forklifts, booms, hydraulic scissors, other high reach equipment, and also offers sales of new and used equipment. Ahern serves customers in many sectors including construction, industrial, residential, utilities, municipalities, conventions, and entertainment/events. The industry is extremely

competitive, and Ahern works diligently to protect its contracts, its goodwill, its confidential information and its trade secrets.

5. Ahern expends considerable resources and effort to identify, train, and develop its employees, its business with potential clients, and market its brand and foster its goodwill.

6. Ahern hired Defendant Young on or about August 26, 2019, as a salaried, exempt Outside Sales Representative at Ahern's Raleigh, North Carolina location. In this key role, Young was the face of Ahern to its customers and potential customers in the market.

7. The heavy equipment rental industry is extremely competitive and Ahern's success in this business is dependent in part on its ability to service and develop relationships with its clients. Business relationships and goodwill are as important, if not more important in many cases, as price in driving customer decisions.

8. Ahern also expends considerable resources and effort to (a) identify and solicit potential clients, (b) maintain and deepen its relationship with existing clients, (c) market its brand and foster client goodwill, and (d) develop its business. The aforementioned information is valuable, confidential, and proprietary to Ahern, and is not generally known in the public domain. This information also has significant economic value to Ahern, and would be of significant economic value to competitors in the industry.

9. Through the years, Ahern has also developed significant goodwill in the industry and the market in which Young worked on its behalf and, via his employment with Ahern, Young developed business relationships with Ahern's customers in the market in which he worked.

10. As the result of his employment with Ahern and the position of trust and confidence he held with the company, Young gained access to Ahern's confidential information and trade secrets, including but not limited to, its pricing, computer programs, customer information, customer lists, price lists, sales information, and other confidential information.

11. Young was able to access Ahern's confidential information and trade secrets stored in Ahern's computer systems. The information stored on these systems constitutes some of Ahern's most valuable and confidential trade secret information and Ahern takes measures to ensure it is protected.

12. Young would not have had access to such information if not for his employment with

TLER MENDELSON P.C.
960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169 5937
702 862 8800

Ahern.

13. Although initially based in Ahern's Raleigh, North Carolina, location, Young frequently worked with the Company's Charlotte, North Carolina, location, and also engaged in sales activities and made actual sales with numerous customers throughout North Carolina, including in Charlotte, North Carolina.

14. In order to safeguard Ahern's proprietary information, customer relationships and goodwill, Ahern required Young to sign a Non-Competition, Non-Solicitation and Non-Disclosure Agreement (the "Agreement") as a condition of his initial employment. A copy of this Agreement is attached hereto as **Exhibit 1**.

15. In return for consideration promised and provided by Ahern, including initial employment, continued employment, training, access to confidential information, good will and the substantial compensation paid to Young, he agreed to the terms of the Agreement.

16. On or about May 5, 2021, Young informed Ahern that he was resigning his employment with Ahern. Ahern's last day working for Ahern was May 5, 2021.

17. Ahern subsequently learned that Young had accepted employment with JGR Equipment Rental & Sales, LL ("JGR") in Charlotte, North Carolina. As a result, Ahern wrote to both JGR and Young on May 10, 2021, informing both of Young's continuing obligations to Ahern and the Company's expectations with regard to same. Copies of these letters are attached hereto as **Exhibit 2**.

18. Notably, Ahern did not object to Young's employment with JGR or demand that JGR not employ Young. (Ex. 2.) On the contrary, Ahern merely asked for information regarding Young's anticipated role and duties with JGR, and sought confirmation that Young and JGR would honor Ahern's rights and Young's obligations under the Agreement. (*Id.*)

19. Ahern did, however, expressly request that Young immediately return any and all Ahern property, materials, documents and information; to the extent the same was in his possession, care, custody or control. (Ex. 2.)

20. Ahern subsequently learned that Young had not followed through with his employment with JGR, but had instead accepted employment with EquipmentShare.com, Inc. ("EquipmentShare")

on or about May 28, 2021.

21. EquipmentShare is another direct competitor of Ahern and an entity that has systematically targeted Ahern sales professionals nationwide in an effort to quickly build market share without having to invest the substantial time and resources necessary to build a legitimate equipment rental business.

22. Ahern only learned about Young's employment with EquipmentShare when the Company lost a valuable customer to Young and EquipmentShare in or around August 2021. Concerned that Young had solicited this customer in violation of his Agreement, Ahern reached out to EquipmentShare on August 31, 2021, to inquire about Young's employment with EquipmentShare, echoing the same concerns and expectations as the Company expressed in its May 10, 2021, letter to JGR and Young.

23. EquipmentShare did not respond to Ahern's communication. Instead, on October 7, 2021, Young filed suit against Ahern in Mecklenburg County, North Carolina, state court, seeking, among other things, declaratory and injunctive relief that would render his continuing legal obligations to Ahern null and void. Young also filed a motion for injunctive relief in the North Carolina court, seeking to, among other things, enjoin Ahern from enforcing the Agreement and protecting itself from continuing irreparable harm.

24. Young's North Carolina Complaint and motion were filed in direct breach of Section 8.1 of his Agreement, which expressly provides that "any and all disputes" arising from the Agreement "shall be heard and resolved exclusively by a Court in the State of Nevada." (Ex. 1 at § 8.1.)

25. Young is currently employed by EquipmentShare as a Sales Representative, ostensibly based in Charlotte, North Carolina, and working from his home because EquipmentShare does not have an actual location in Charlotte.

26. Young also claims to be assigned to work from EquipmentShare's location in Ladson, South Carolina.

27. Accordingly, Young's employment with EquipmentShare is squarely within the 100-mile Restricted Territory set forth in Section 2.4 of his Agreement, given that Young routinely performed work for Ahern's Charlotte, North Carolina location, and called upon customers and

TLER MENDELSON P.C.
960 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169 5937
702 862 8800

completed sales for Ahern in Charlotte, North Carolina.

28. Young has solicited and/or obtained business for EquipmentShare from his former customers while working for Ahern.

29. Ahern's investigation to date has also revealed that prior to resigning from his employment with Ahern, Young engaged in a deliberate effort to misappropriate Ahern Confidential Information and Trade Secrets by sending highly proprietary Company information – including pricing reports, "screenshots" of data from Ahern's proprietary AS400 database, specific business plans and pending projects, and information regarding customer leads – from his Ahern email address to his personal, cloud-based account, johnmyoung93@gmail.com.

30. Young's apparent misconduct in this regard mirrors the misconduct of numerous other former Ahern sales professionals now working for EquipmentShare who likewise began emailing Ahern Confidential Information and Trade Secrets to their personal cloud accounts shortly before abruptly quitting their employment with Ahern to immediately begin working for EquipmentShare.

31. Despite the clear notice of Young's obligations under the Agreement and Ahern's efforts to achieve Young's compliance with his restrictive covenants, Young has refused to comply, and continues to be employed by EquipmentShare.

32. Upon information and belief, the above misconduct by Young is merely the first of his unlawful actions to be discovered Ahern.

33. As a direct result of Young's intentional and wrongful conduct, Ahern has suffered irreparable harm and continues to suffer the same in the form of actual and threatened misappropriation of Trade Secrets and Confidential Information, damage to its reputation and goodwill, loss of current and future business opportunities, loss of market share, and damage to relationships with customers, suppliers and distributors.

34. Absent immediate, preliminary and permanent injunctive relief, Ahern has no adequate remedy at law.

/ / /

TLER MENDELSON P.C
960 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169 5937
702 862 8800

**THUS ENDS MY DECLARATION.**

**I hereby declare under penalty of perjury that the foregoing is true and correct.**

Mike Vawter

12-2-2021
Date

4862-9273-9333.1 / 099283-1067

TLER MENDELSON P.C.
960 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169 5937
702 862 8800

# EXHIBIT 1

EXHIBIT 1

# NON-COMPETITION, NON-SOLICITATION AND NON-DISCLOSURE AGREEMENT

THIS NON-COMPETITION, NON-SOLICITATION AND NON-DISCLOSURE AGREEMENT (this "**Agreement**") is entered into as of the 08/20/19 (the "**Effective Date**"), by and between AHERN RENTALS, INC., a Nevada corporation with a principal place of business at 1401 Mineral Avenue, Las Vegas, Nevada 89106, together with its parents, subsidiaries, divisions, joint ventures, successors, assigns, and affiliates, including, without limitation, Xtreme Manufacturing, LLC, Snorkel International, LLC, and each of their parents, subsidiaries, divisions, joint ventures, successors, assigns, and affiliates (collectively, the "**Company**"), and JOHN MATTHEW YOUNG ("**Employee**").

A. Employee acknowledges and agrees that his/her services hereunder are of a special, unique, extraordinary and intellectual character and that his/her position with Company places him/her in a position of confidence and trust with the customers and employees of Company.

B. Employee further acknowledges and agrees that his/her employment with Company necessarily requires the disclosure to Employee of confidential information and trade secrets of Company related to its employees, parents, subsidiaries, affiliates, contractors, customers, prospective customers, operations, markets, and services.

C. Company and Employee (each a "**Party**" and collectively, the "**Parties**"), agree that in the course of Employee's employment with Company, Employee has and will continue to develop a personal relationship with Company's customers and a knowledge of those customers' affairs and requirements, and that the relationship of Company with its established and prospective customers will therefore be placed in Employee's hands in confidence and trust.

D. The Parties agree that in the course of Employee's employment with Company, Employee has and will continue to develop a personal relationship and to obtain sensitive, confidential, and trade secret information regarding Company's employees, parents, subsidiaries, affiliates, contractors, or others performing work for Company, including their skills, training and Company investments in employees, employee strengths and weaknesses, employee contact or other identifying information, and other information Company employees place or exchange with Employee in confidence and trust while in the workplace.

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

NOW THEREFORE, in consideration of the mutual covenants herein contained, and other good and valuable consideration (including specifically the consideration addressed in Section 1 below), the receipt and sufficiency of which is hereby acknowledged, the Parties, each intending to be legally bound, hereby agree as follows:

1. SUFFICIENT CONSIDERATION.

Recognizing that it is reasonable and necessary for Company to protect its customer relationships, employees, and the confidential information, trade secrets, goodwill and business of Company, Employee agrees to the obligations and restrictions contained in this Agreement in consideration of the following: (A) Company's continued at-will employment of Employee; (B) Employee's access to the Confidential

NOW THEREFORE, in consideration of the mutual covenants herein contained, and other good and valuable consideration (including specifically the consideration addressed in Section 1 below), the receipt and sufficiency of which is hereby acknowledged, the Parties, each intending to be legally bound, hereby agree as follows:

1. <u>SUFFICIENT CONSIDERATION</u>.
Recognizing that it is reasonable and necessary for Company to protect its customer relationships, employees, and the confidential information, trade secrets, goodwill and business of Company, Employee agrees to the obligations and restrictions contained in this Agreement in consideration of the following: (A) Company's continued at-will employment of Employee; (B) Employee's access to the Confidential

Information (as such term is defined in Section 3.4) and Trade Secrets (as such term is defined in Section 3.4) of Company; and (C) the continued investment by Company in Employee.

2. <u>NON-COMPETITION; NON-SOLICITATION.</u>

2.1. Employee covenants that during the period that he/she is employed by Company and thereafter for the 12-month period immediately following the date on which Employee's employment with Company is terminated (the "**Date of Termination**"), he/she will not, as an individual, consultant, partner, member, shareholder, independent contractor, representative, or otherwise, or in association with any other person, business or enterprise, except on behalf of Company, directly or indirectly:

A. attempt in any manner to solicit from any Customer (as such term is defined in Section 2.3) business of the type performed by Company or to persuade any Customer to cease to do business or to reduce the amount of business which any such Customer has customarily done or is reasonably expected to do with Company, whether or not the relationship between such member of Company and such client was originally established in whole or in part through his/her efforts; or

B. employ as an employee, or retain or engage as a consultant, any person who is then or at any time during the preceding 12 months was an employee of or exclusive consultant to Company, or persuade or attempt to persuade any employee of or exclusive consultant to Company to leave the employ of Company or to become employed as an employee or retained as a consultant by anyone other than by Company.

2.2 If the Employee's employment with the Company is terminated prior to a Change in Control (as such term is defined in Section 2.7), whether or not such termination is initiated by the Company or by the Employee, Employee covenants that during the period that he/she is employed by Company and thereafter for the 12-month period immediately following the Date of Termination, he/she will not, as an individual, consultant, partner, member, shareholder, independent contractor, representative, or otherwise, or in association with any other person, business or enterprise, except on behalf of Company, directly or indirectly, be employed, retained or otherwise provide any consulting, contracting, sales or other services that are the same or similar services that Employee provided at the Company to any person or entity who or which then competes with Company to any extent within the Restricted Area (as such term is defined in Section 2.4). Notwithstanding the foregoing, in the event Employee resigns his employment or is terminated on or after a Change in Control, Employee shall have no obligations to comply with this Section 2.2. However, Employee shall be bound by all other provisions of this Agreement.

2.3. As used in this Section 2, the term "**Customer**" will mean: (A) any person or entity who is a customer of Company on the Date of Termination; (B) any person or entity who was a customer of Company at any time during the one-year period

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

immediately preceding the Date of Termination; (C) any prospective customers to whom Company made a new business presentation (or similar offering of services) at any time during the two-year period immediately preceding the Date of Termination; and (D) any prospective customer to whom Company made a new business presentation (or similar offering of services) at any time within six months after the Date of Termination (but only if the initial discussions between Company and such prospective client relating to the rendering of services occurred prior to the Date of Termination, and only if employees of Company participated in such discussion or the preparation of such solicitation). In addition, if a Customer is part of a group of companies which conducts business through more than one entity, division or operating unit, whether or not separately incorporated (a "**Customer Group**"), the term "Customer" as used herein will include each entity, division and operating unit of that Customer Group where the same management group of the Customer Group has the

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

decision making authority or significant influence with respect to contracting for services of the type rendered by Company.

2.4 The "**Restricted Area**" shall consist of a 100 mile radius of any of Company's stores in or for which Employee performed services, or had management or sales responsibilities at any time during the 12-month period immediately preceding the Date of Termination and in which the Company has established customer contacts and good will.

2.5. All time periods in this Agreement shall be computed by excluding from such computation any time during which Employee is or was in violation of any provision of this Agreement and any time during which there is pending in any court of competent jurisdiction any action (including any appeal from any final judgment) brought by any person or entity, whether or not a party to this Agreement, in which action Company seeks to enforce the agreements and covenants in this Agreement or in which any person or entity contests the validity of such agreements and covenants or their enforceability or seeks to avoid their performance or enforcement.

2.6. Prior to accepting any position with any person or entity during the 12-month period immediately following the Date of Termination, Employee shall give Company prior written notice of the name of such person or entity. Employee agrees that Company shall have the right to advise such person or entity of the provisions of this Agreement and to correspond and otherwise deal with each such person or entity to the extent Company deems necessary in order to enforce the terms and conditions of this Agreement.

2.7 The term "**Change in Control**" will mean the occurrence of any of the following: (a) Don Ahern shall cease to own, directly or indirectly, at least 51% of the outstanding voting capital stock of the Company, (b) Don Ahern shall, by agreement or otherwise, cease to have the right to exercise voting control of Company, or (c) Don Ahern shall die or shall become incapacitated or disabled such that Don Ahern is unable to properly perform the duties for Company that he performs for Company on the Effective Date.

3. NON-DISCLOSURE.

3.1. The Parties acknowledge and agree that in the course of Employee's employment with Company Employee will acquire and have access to Confidential Information and Trade Secrets of Company and/or the customers. Employee acknowledges and agrees that the Confidential Information and Trade Secrets constitute valuable goodwill of Company and are owned, and shall continue to be owned, solely by Company and/or the customers.

3.2. Employee shall not at any time: (A) disclose any Confidential Information or Trade Secret without the express written consent of Company; (B) utilize any Confidential Information or Trade Secret for his/her own benefit, or for the benefit of any third party; or (C) remove or take personal possession of any Confidential Information or Trade Secret from Company's premises, systems,

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

servers, or other location, physical or electronic, without the express written consent of Company. Employee acknowledges and agrees that all memoranda, manuals, reports, plans, designs, notes, records and other documents compiled or produced by him/her or made available to him/her pertaining to the business of Company and/or the Customers (whether or not the same constitutes Confidential Information or a Trade Secret), shall be and remain the property of Company, shall remain subject at all times to Company's sole discretion and control, and all originals and copies of the same shall be delivered immediately to Company on the Date of Termination or, upon request, at any other time.

3.3. In the event that Employee becomes legally required to disclose any Confidential Information or Trade Secret, he/she will provide Company with prompt written notice thereof in accordance with Section 8.3 so that the Company may seek a protective order or other appropriate remedy and/or

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

waive compliance with the provisions of this Section 3 to permit a particular disclosure. In the event that such protective order or other remedy is not obtained, or that Company waives compliance with the provisions of this Section 3 to permit a particular disclosure, Employee covenants to furnish only that portion of the Confidential Information or Trade Secret which Employee is legally required to disclose and will cooperate with the efforts of Company to obtain a protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information or Trade Secret.

3.4. For purposes of this Agreement: (A) "**Confidential Information**" shall mean any information that Employee learns or develops during the course of employment with Company that is not generally known to the public, including, but not limited to, methods, models, passwords, access to computer files, financial information and records, computer software programs, agreements and/or contracts with Customers or employees, names of manufacturers, suppliers and other entities that have a business relationship with Company, Customer preferences, marketing and/or creative ideas, plans and policies, data processing programs and files, advertising campaigns, marketing plans, media plans and budgets, practices, concepts, strategies, employee handbooks, and information about or received from Customers and other entities with which Company does business, and information regarding Company's parents, subsidiaries, affiliates, employees, contractors, or others performing work for Company, including their skills, training and Company investments in employees, employee strengths and weaknesses, employee contact or other identifying information, and other information Company employees place or exchange with Employee in confidence and trust while in the workplace; and (B) "**Trade Secret**" shall mean all information of Company which: (i) Company derives independent economic value, actual or potential, from; (ii) is not generally known to, and is not readily ascertainable by, persons who can obtain economic value from its disclosure or use; and (iii) is the subject of Company's efforts to maintain its secrecy that are reasonable under the circumstances, regardless of whether such information may be protected as a trade secret under applicable law.

The Parties agree that the term Confidential Information or Trade Secret does not include information which: (I) becomes generally available to the public other than by breach of this Section 3; (II) Employee learns from a third party who is not under an obligation of confidence to Company; and (III) Employee learns by virtue of his/her experience in the industry, generally, which is not in any way manifested in proprietary property of Company.

3.5. No later than the Date of Termination, Employee shall: (A) deliver to Company all documents, supplies, records, computer media, notebooks and similar repositories of or containing Confidential Information and/or Trade Secrets, originals and copies, in his/her possession, whether prepared by him/her or others; (B) return to Company all items or property paid for or provided by Company for use during Employee's employment, including laptops, computer and office equipment, data storage devices, software programs, cell phones, mobile devices, access cards, keys and credit cards; (C) turn over to Company all

user identification numbers and passwords created or obtained by Employee in connection with his/her employment or as a result of his/her access to any of Company's computers and other equipment, and destroy any copies in Employee's control; and (D) cease accessing, or attempting to access, any of Company's computers and other equipment. Employee shall promptly upon request provide to Company a sworn affidavit attesting to his/her compliance with this Section 3.5.

4. OWNERSHIP OF INVENTIONS AND OTHER DEVELOPMENTS.
Company shall be entitled to own and control all proprietary technology and all financial, operating, and training idea, processes, and materials, including works of expression and all copyrights in such works, that are developed, written, or conceived of by Employee during employment to the extent that they relate to Company's current or potential business. Accordingly, Employee shall be required to disclose, deliver, and assign to Company all such patentable inventions, discoveries, and improvements; trade secrets; and all

work subject to copyright, and Employee agrees to execute all documents, patent applications, and arrangements necessary to further document such ownership and/or assignment, and to take whatever other steps may be needed to give Company the full benefit of them. Employee specifically agrees that all copyrightable materials generated or developed and covered by this Agreement, including but not limited to computer programs and documentation, shall be considered works made for hire under the copyright laws of the United States and that they shall, upon creation, be owned exclusively by Company. To the extent that any such materials, under applicable law, may not be considered works made for hire, Employee hereby assigns to Company the ownership of all copyrights in such materials, without the necessity of any further consideration, and Company shall be entitled to register and hold in its own name all copyrights in respect of such materials.

5. <u>EQUITABLE REMEDIES; LIQUIDATED DAMAGES</u>.

The Employee understands that terms and provisions of Sections 2, 3 or 4 are the essence of this Agreement, and without which no agreement would be entered into by the Company. Employee agrees that in the event of a breach of any terms of this Agreement, and more particularly in the event of a breach of any of the terms and provisions of Sections 2, 3 or 4 hereof, the damages will be difficult if not impossible to ascertain. It is therefore agreed that if Employee commits a breach or, in Company's reasonable judgment, is about to commit a breach, of any of the provisions of Sections 2, 3 or 4 hereof, Company shall be entitled to: (A) have the provisions of this Agreement specifically enforced (including, without limitation, through pursuit of injunctive relief) by any court having equity jurisdiction without being required to post bond or other security and without having to prove the inadequacy of the available remedies at law; (B) require Employee to hold in a constructive trust, account for and pay over to Company all compensation and other benefits which Employee derives as a result of any action or omission which constitutes a violation of any provision of this Agreement; and (C) liquidated damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS AND 00/100THS ($250,000.00). The Parties agree that the liquidated damages provision provided for herein are reasonable in amount and not a penalty. In addition, Company may take all such other actions and remedies available to it under law or in equity and shall be entitled to such money damages insofar as they can be reasonably determined, including, without limitation, all reasonable costs and attorneys' fees (including those of Company's in-house attorneys) incurred by Company in enforcing the provisions of this Agreement.

6. <u>REASONABLENESS OF RESTRICTIONS; SEVERABILITY</u>.

Employee acknowledges and agrees that the type and periods of restrictions imposed in the provisions of Sections 2, 3 and 4 hereof are fair and reasonable and are reasonably required for the protection of Company's Customer relationships, employees, and the Confidential Information, Trade Secrets, goodwill and business of Company. Employee specifically acknowledges and agrees that Employee's compliance with the restrictions imposed in the provisions of Sections 2, 3 and 4 hereof will not prevent him/her from being employed or earning a livelihood. If any of the terms contained in Sections 2, 3 and 4 hereof, or any part thereof, is held by a court of competent jurisdiction to be unenforceable in any respect, , the Parties agree that: (A) the court may alter such term so that it remains enforceable to the maximum extent available under law; and (B) to

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

the extent such alteration is not possible, the court shall sever the unenforceable term(s) such that the remainder of the Agreement and all terms remain enforceable.

7. COOPERATION OF EMPLOYEE.
During and following Employee's employment with Company, Employee shall cooperate fully and at reasonable times with Company, its affiliates and subsidiaries in all matters and proceedings on which Company or any subsidiary seeks Employee's assistance and as to which Employee has any knowledge or involvement. Without limiting the generality of the foregoing, Employee shall make himself/herself available to testify with respect to such matters and proceedings, and will cooperate with counsel to Company in preparing materials and offering advice in such matters and proceedings. If Employee is not then employed with Company, Company shall in such event pay to Employee reasonable compensation for documented time spent in such cooperation, consistent with Employee's compensation from Company prior to the Date of Termination.

8. <u>GENERAL PROVISIONS</u>.

8.1. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada, without giving effect to its choice of law provisions. Any and all disputes arising from this Agreement shall be heard and resolved solely and exclusively by a Court in the State of Nevada.. Employee expressly consents and agrees to personal jurisdiction in Clark County, Nevada and hereby waives any claim that Clark County, Nevada is an inconvenient forum and any claim that an action or proceeding arising out of or relating to this Agreement and commenced in the aforementioned court lacks proper venue.

8.2. This Agreement may be executed in one or more counterparts; <u>*provided, however*</u>, that all such counterparts shall, together upon execution and delivery, constitute one and the same instrument. Signatures on this Agreement transmitted by facsimile or other electronic means (e.g., pdf) shall be deemed original signatures for all purposes of this Agreement.

8.3. Any notice required to be provided hereunder shall be provided in writing addressed asfollows:

A. Notice to Company shall be provided to the following

addresses: Ahern Rentals, Inc.
8350 Eastgate Road
Attn: Legal
Department
Henderson, Nevada
89015

B. Notice to Employee shall be provided to the most recent address provided by Employee to Company's Human Resources.

All notices required or permitted hereunder will be deemed effectively given the earlier of: (i) when received; (ii) when delivered personally; (iii) one business day after being delivered by fax;
(iv) one business day after being deposited with an overnight courier service; or (v) five business days after being deposited in the U.S. mail, first class with postage prepaid and addressed to the parties at the addresses provided in this Agreement. Either Party may change his/her/its address by written notice in accordance with this Section 8.3.

8.4. Any captions of articles, sections, subsections or paragraphs of this Agreement are solely for the convenience of the Parties and are not a part of this Agreement or to be used for the interpretation of this Agreement or any provision hereof.

8.5. **EMPLOYEE AND COMPANY AGREE TO WAIVE A TRIAL BY JURY IN ALL LEGAL DISPUTES BROUGHT PURSUANT TO THIS AGREEMENT. ALL SUCH DISPUTES SHALL BE HEARD BY A JUDGE OR JUDICIAL OFFICER IN STATE OR FEDERAL**

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

**COURT. THE PARTIES ACKNOWLEDGE THE IMPORTANCE OF THIS JURY WAIVER AND EXPRESSLY AGREE TO SAME.**

**THE PARTIES ALSO AGREE THAT ANY DISPUTES ARISING UNDER OR FROM THIS AGREEMENT SHALL BE BROUGHT SOLELY IN AN INDIVIDUAL CAPACITY, AND THAT NEITHER PARTY SHALL BE ENTITLED TO BRING CLAIMS ARISING UNDER OR FROM THIS AGREEMENT IN A CLASS OR COLLECTIVE CAPACITY. THE PARTIES HEREBY WAIVE THEIR RIGHT TO BRING A CLASS ACTION AGAINST EACH OTHER. THE PARTIES ACKNOWLEDGE THE IMPORTANCE OF THIS CLASS ACTION WAIVER AND EXPRESSLY AGREE TO SAME.**

8.6. This Agreement is subject to amendment only by subsequent written agreement between, and executed by, the Parties.

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

8.7. Employee represents and warrants that: (A) he/she has freely, knowingly and voluntarily entered into this Agreement; (B) no promise, inducement or agreement not herein expressed has been made to Employee; (C) this Agreement contains the entire agreement between Company and Employee; (D) the terms of this Agreement are contractual and not mere recitals; (E) he/she is of legal age and legally competent to execute this Agreement; (F) he/she has had the opportunity to consult and review this Agreement with an attorney; and (G) this Agreement does not and shall not change Employee's status as an "at will" employee and that Employee can be terminated by Company at any time with or without cause and with or without notice.

[THIS SPACE INTENTIONALLY LEFT BLANK]

DocuSign Envelope ID: 25422C6D-0E0C-4255-A9C1-F18249E845A8

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

Employee Name: JOHN MATTHEW YOUNG

Employee Signature: JOHN MATTHEW YOUNG Date:

Manager Name: Thor Cranfill

Manager Signature: 8/20/2019 Date: Thor Cranfill

# EXHIBIT 2

EXHIBIT 2

Ahern Rentals, Inc. • 8350 Eastgate Road • Henderson, NV • 89015 • (702) 368-6793

May 10, 2021

***Via U.S. Mail***

JGR Equipment Rental & Sales, LLC
6350 Brookshire Blvd
Charlotte, NC 28216

**Re: Continuing Obligations to Ahern Rentals, Inc.**
*****AFFIRMATIVE RESPONSE REQUIRED*****

Dear Sir or Madam:

I am writing on behalf of Ahern Rentals, Inc. ("Ahern" or "Company"). It is my understanding that John Young recently took a position with JGR Equipment Rental & Sales, LLC ("JGR"). Please be advised that Mr. Young is under continuing contractual restrictions and obligations with respect to Ahern and its business, customers and clients, employees, and its records and business information.

Mr. Young entered into a Non-Competition, Non-Solicitation and Non-Disclosure Agreement ("Agreement") with Ahern on or about August 20, 2019. For your convenience, a copy of your Agreement is enclosed. This Agreement with Ahern imposes important legal obligations and restrictions upon Mr. Young. Section 6 of the Agreement specifically provides that Mr. Young agreed that these restrictions are fair and reasonably required for the protection of the Company's customer relationships, employees, confidential information, trade secrets, and goodwill.

Mr. Young's obligations as set forth in the Agreement prohibit him from: (1) working for a competitor of Ahern within a 100-mile radius of any of Ahern's stores in or for which Mr. Young performed services, or had management or sales responsibilities; (2) soliciting Ahern's customers; (3) soliciting Ahern's employees to leave their employment with Ahern; and (4) disclosing any of Ahern's Confidential Information or Trade Secrets that he has in his possession or control including material contained on any cell phone, computer, tablet, or in any other form. To the extent that Mr. Young remains in possession, care, custody or control of any of Ahern's property, materials, documents, and information, Mr. Young is directed to immediately return it.

Considering the serious nature of this matter, Ahern demands that JGR respond to this letter on or before **5:00 p.m. Pacific Time on Monday, May 17, 2021**, with the following representations and disclosures:

(1) that Mr. Young will fully comply with the terms of the Agreement;

(2) the position, assigned location(s), and job responsibilities with JGR;

(3) any measures JGR has put in place to ensure that Mr. Young is not violating the Agreement with Ahern.

Finally, please confirm in writing that JGR has not received or retained any documents or information reflecting Ahern's Confidential Information or Trade Secrets of any kind, in any form.

If you have any questions regarding this letter, immediately contact me at (702) 368-6793. I look forward to your prompt response.

**Please be advised that Ahern reserves its rights and remedies available at law or in equity regarding this matter without further notice.**

Very truly yours,

M. Sami Bakdash, Esq.
VP of Legal, General Counsel, & Corporate Secretary
Ahern Rentals, Inc.