**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Ahern Rentals, Inc., <br><br> Plaintiff <br><br> v. <br><br> John Matthew Young, <br><br> Defendant | Case No.: 2:21-cv-02190-JAD-BNW <br><br> **Order Granting in Part Motion for Preliminary Injunction; Granting Motion to Vacate Temporary Restraining Order; Denying Motion to Stay; Granting Motions to Seal; and Denying as Moot Motion for Order to Show Cause** <br><br> [ECF Nos. 6, 14, 16, 34, 40, 41] |

Ahern Rentals, Inc. brings this breach-of-contract and misappropriation-of-trade-secrets action against John Matthew Young, a former Ahern sales representative. Ahern alleges that after Young left Ahern's Raleigh, North Carolina office, he was hired as a salesperson by EquipmentShare.com—Ahern's direct competitor—in Charlotte, North Carolina.[1] Ahern theorizes that Young's new employment violates the non-competition provision in the employment contract he signed when he started at Ahern.[2] It also claims that Young violated the non-solicitation and non-disclosure agreements in the contract.[3]

I previously granted Ahern's motion for a temporary restraining order (TRO) and prohibited Young from working as a salesperson for Ahern's competitors within a 100-mile radius of Ahern's Raleigh and Charlotte, North Carolina branches; attempting to solicit any Ahern customers; and using or divulging any of Ahern's confidential or trade-secret

---

[1] ECF No. 1-1.

[2] *Id*.

[3] *Id*.

information.[4] I also ordered Young to turn over to Ahern any documents he possesses that contain confidential information.[5]

Young responded with a motion to dissolve or vacate the TRO, contending that the agreement is unenforceable and that he has not violated it.[6] He also moves to stay this case pending the outcome of a related case Young filed in North Carolina contesting the validity of his agreement with Ahern.[7] After a hearing on all pending motions, I ordered supplemental briefing on evidentiary issues that could affect my preliminary-injunction determination.[8] I grant Ahern's motion for a preliminary injunction on its non-disclosure claims only and otherwise grant Young's motion to vacate the TRO. I also deny Young's motion to stay this case, grant Ahern's motions to seal, and deny as moot Ahern's motion to show cause.[9]

---

[4] ECF No. 13.

[5] *Id.*

[6] ECF No. 14.

[7] ECF No. 16.

[8] ECF No. 31; ECF No. 33; ECF No. 43.

[9] At oral argument on Ahern's preliminary-injunction motion and Young's motion to vacate the TRO, I advised the parties that, given the expedited nature of the supplemental briefing I ordered, I would allow any confidential exhibits to be filed under seal. *See* ECF No. 31. The parties have filed a stipulated protective order indicating agreement on the confidential nature of the documents they filed for the purposes of filing them in this court. ECF No. 32; ECF No. 36. I find that Ahern has established compelling reasons to seal these documents so I grant its motions to seal them. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

**Discussion**

**I.     Ahern is entitled to preliminary injunctive relief on its non-disclosure claims only.**

    **A.     Preliminary-injunction standard**

Preliminary injunctive relief is an "extraordinary" remedy that is "never awarded as of right."[10]  The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that to obtain an injunction, the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."[11]  The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied."[12]

    **B.     Ahern has not shown irreparable harm on its non-compete and non-solicitation claims.**

In its motions for a temporary restraining order and preliminary injunction, Ahern represented that Young is currently employed by EquipmentShare and therefore actively competing against Ahern.[13]  It also stated that, after Ahern sent notice to EquipmentShare that Young was likely violating his non-compete agreement in August, 2021, "EquipmentShare did not respond to Ahern's communication" and instead helped Young "file suit against Ahern" in

---

[10] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[11] *Id.* at 20.

[12] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[13] *See* ECF No. 5 at 8.

North Carolina state court in October 2021, seeking a declaration that the agreement was void and unenforceable.[14] Ahern responded by filing its own lawsuit here.

But Ahern's representations omitted some crucial details. In response to Ahern's motions, Young attached emails between EquipmentShare and Ahern counsel, in which EquipmentShare informed Ahern—two days after Ahern notified EquipmentShare of Young's alleged breach—that Young had been suspended without pay until it completes an investigation to determine whether Young violated Ahern's agreement.[15] EquipmentShare also twice represented that it would "provide Ahern with an opportunity to respond to the basis for that determination before [it took] any action to lift the suspension."[16] Young argues that this suspension negates any irreparable-harm argument Ahern could make because Young is not capable of violating the non-compete and non-solicitation portions of the agreement while he is effectively unemployed.[17]

Ahern fails to explain how Young's suspension does not doom its irreparable-harm argument. It states that it originally "did not feel compelled to seek injunctive relief" based on EquipmentShare's assurances.[18] Ahern then claims that Young's decision to file suit against Ahern in North Carolina was its impetus to file this suit and seek injunctive relief.[19] But Ahern has not shown how Young's legal challenge creates some irreparable risk that Young would

---

[14] *Id.*

[15] *See* ECF No. 22-3.

[16] *Id.* at 2; *see also id.* at 3.

[17] ECF No. 19 at 22.

[18] ECF No. 28 at 9.

[19] *Id.*

4

further violate his non-compete and non-solicitation agreements that otherwise didn't exist before he filed suit.[20]

I acknowledge that Ahern has produced evidence that Young may have previously violated his agreement by doing business with Ahern customers and competing with Ahern in a geographic area that he may be prohibited from competing in.[21] But Ahern has not presented competent evidence indicating that Young will *continue* violating the non-compete and non-solicitation portions of his agreement absent a preliminary injunction, particularly in light of EquipmentShare's uncontroverted assurances that Ahern will be notified before Young's suspension is lifted.[22] And, if it is later determined that Young's employment with EquipmentShare between May and September 2021—when he was suspended—and his alleged solicitation of four of Ahern's customers did violate his agreement, those would be discrete

---

[20] Ahern suggests that Young's decision to file in North Carolina also violated the agreement, which contains a Nevada forum-selection clause. *Id*. But Young points to Gen. Stat. N.C. § 22B-3, which declares any forum-selection clause entered into in North Carolina contrary to public policy and therefore void. ECF No. 16 at 5. Even if Young's appeal to § 22B-3 may not be ultimately successful, he articulates a colorable legal basis to bring suit in North Carolina instead of Nevada. I do not find that his forum choice implies that he is further willing to continue violating other portions of his agreement.

[21] Ahern and Young vigorously dispute whether the agreement prevents Young from working in the Charlotte area and whether he solicited the Ahern customers with whom he did business while working at EquipmentShare. I express no opinion on the strength or validity of those arguments at this stage.

[22] Young's attorney, who is being paid by EquipmentShare to represent him in this and his North Carolina action, *see* ECF No. 33-4 at 5, further represented that it is the hope "that if a court either from North Carolina or Nevada says that these covenants are not enforceable[,] that he can return to work subject to any modifications to . . . those covenants that . . . the judge may impose, whether it's [this court] or the court in North Carolina." Transcript of January 18, 2022, Hearing on Preliminary Injunction, *see* ECF No. 31. At this stage, I am satisfied that EquipmentShare does not intend to lift its suspension until it concludes its own investigation, with notice to Ahern, or until this or the North Carolina case reaches final judgment.

violations that can be remedied by provable, monetary damages.[23]  Of course, should EquipmentShare lift its suspension or Ahern discover competent evidence that shows that Young has resumed competing or soliciting customers on behalf of EquipmentShare or any another employer, Ahern may file a new preliminary-injunction motion seeking further relief.  For now, however, Ahern has not shown an irreparable risk of harm stemming from Young's alleged violations of his non-compete and non-solicitation agreements.

>   **C.    Ahern has demonstrated a likelihood of success on the merits and the risk of irreparable harm on its non-disclosure claims.**

In the latest round of supplemental briefing, Ahern presents evidence that Young sent information regarding Ahern's customers to his personal email account through at least February 2020 to March 2021.[24]  One such document appears to be a compilation of screenshots of the North Carolina customer list contained in Ahern's "AS/400" database, a program that Ahern's chief information officer (CIO) states is a password-protected system that contains "comprehensive information for all Ahern customers nationwide," as well as the "RentalMan software platform" used to "manage all aspects of its equipment rental business."[25]  Ahern also produced price quotes for Ahern customers from Young's personal email address, a "rate worksheet" containing "Ahern's entire southeast equipment list and pricing information,"[26] and

---

[23] *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (internal quotation omitted)).

[24] *See generally* ECF Nos. 35-1; ECF Nos. 35-4–35-9 (filed under seal).

[25] ECF No. 33-9 at 3, 4 (Stilwagner declaration).

[26] ECF No. 33 at 8.

lists of Young's customers and target customers, with notes on the customers' interests and preferences.[27]

At his deposition, Young admitted that he has these documents on his personal email account, explaining that he sent the price quotes to and from his personal account while he was working for Ahern because he could not access Ahern documents outside of the office, and he occasionally would send work home to complete at his leisure.[28] He also admitted that he took screenshots of the AS/400 database after he decided to leave Ahern because of a negative interaction he had with his manager in March.[29] Young also testified that he only used the AS/400 customer list to determine which customers he could *not* reach out to on EquipmentShare's behalf and has not divulged any of the documents in his possession to anyone outside of Ahern.[30]

In my previous order granting Ahern's motion for a temporary restraining order, I ordered Young to "turn over to Ahern, and cease any use of, any of Ahern's documents (including all copies), tangible information, and tangible data to the extent he is in possession of, or has access to, such confidential information" by December 23, 2021, and prohibited him from "using or divulging any of Ahern's confidential or trade secret information."[31] But Young's counsel had a difficult time reaching Young over the holidays and did not meet the court's deadline.[32] As of January 31, 2022, Young had still not turned over any documents or data to

---

[27] *See generally* ECF No. 35-1; ECF Nos. 35-4–35–9.
[28] *See* ECF No. 33-4 at 36–37.
[29] *Id.* at 42–45.
[30] *Id.* at 35, 41.
[31] ECF No. 13 at 5.
[32] *See* ECF No. 14-2.

Ahern.³³ He now contends that none of the documents in his possession qualify as confidential or trade-secret information and therefore that they are not covered by the TRO.³⁴ He also argues that because the documents aren't filled with confidential or trade-secret information, and because there is no evidence that Young has used or divulged any of this information since leaving Ahern, Ahern cannot show a likelihood of success on the merits of its misappropriation claim.³⁵

Ahern's complaint contains both a breach-of-contract claim and a Nevada Uniform Trade Secrets Act (NUTSA) claim related to the Ahern documents in Young's possession.³⁶ Because I find that Ahern can show a likelihood of success on the merits of its contract claim, I don't reach the sufficiency of Ahern's NUTSA allegations, because the injunctive relief that stems from both claims is the same—return of the documents and a prohibition on using or divulging them. Young's employment contract contains non-disclosure provisions that prohibit employees from disclosing or utilizing confidential or trade-secret information and from removing any such information from Ahern systems without "express written consent."³⁷ It defines confidential information as "any information that [an employee] learns or develops during the course of employment . . . that is not generally known to the public, including, but not limited to, . . . agreements and/or contracts with [c]ustomers or employees, . . . [c]ustomer preferences, . . . and information about or received from [c]ustomers and other entities with which [Ahern] does

---

³³ *See* ECF No. 40 (Ahern's motion for an order "to show cause why sanctions should not be issued as the result of his failure to comply with the [c]ourt's December 22, 2021," TRO).

³⁴ *See* ECF No. 19 at 16–19; ECF No. 43 at 6–8.

³⁵ *Id*.

³⁶ See ECF No. 1-1 at ¶¶ 52, 71–82.

³⁷ ECF No. 33-1 at 6–7.

business. . . .[38] It defines "trade secret" as all information that Ahern "derives independent economic value, actual or potential, from; . . . is not generally known to, and is not readily ascertainable by, persons who can obtain economic value from its disclosure or use; and . . . is the subject of [Ahern's] efforts to maintain its secrecy that are reasonable under the circumstances, regardless of whether such information may be protected as a trade secret under applicable law."[39] Ahern requires terminated employees to return anything containing confidential information or trade secrets by their date of termination.[40]

    I find that Ahern has shown a likelihood that the information in Young's possession meets the definition of "confidential information" contained in the agreement. And while "not every customer and pricing list will be protected as a trade secret,"[41] Ahern has demonstrated that the information Young has contains information beyond just customer names and general pricing—it contains personal notes and discount rates for individual clients that appear sufficiently confidential to warrant preliminary injunctive relief. Young's admission that he forwarded this information to his personal email address further establishes a likelihood that Ahern can prove Young breached the provision prohibiting employees from "remov[ing] or tak[ing] personal possession of any [c]onfidential [i]nformation or [t]rade [s]ecret from [Ahern's] presmises, systems, services, or other location . . . without [Ahern's] express written consent."[42] And while Ahern has not produced concrete evidence that Young has shared this

---

[38] *Id.* at 8.

[39] *Id.*

[40] *Id.* at 8–9.

[41] *Frantz v. Johnson*, 999 P.2d 351, 359 (Nev. 2000).

[42] ECF No. 1-1 at 10.

information with third parties, I find that it has demonstrated a likelihood that Young might,[43] and that Ahern would suffer irreparable harm if he did.

I also find that that balance of hardships tips in Ahern's favor in this regard. Young identifies no hardship to turning over Ahern information or being prohibited from using or divulging it. And there is no indication that granting this narrow injunctive relief would run afoul of the public interest. So I grant Ahern injunctive relief and enjoin Young's possession and use of Ahern's confidential information. This includes information taken from Ahern's database and any documents that Young created using Ahern confidential information.[44] And because this relief obviates the need for another order concerning Young's failure to turn over this information earlier, I deny as moot Ahern's motion for an order to show cause.[45]

## II.     Young's motion to stay is denied.

Young moves to stay this case under the first-to-file rule until the North Carolina court rules on Ahern's motion to dismiss or transfer venue in that case.[46] Since Young's motion was briefed, the magistrate judge in the North Carolina case recommended transfer to this court.[47]

---

[43] Young admitted that he took the AS/400 screenshots after he decided to look for another job and because he was "a little pissed" at his Ahern manager. *See* ECF No. 33-4 at 43.

[44] In his deposition, Young took the position that the price quotes produced here do not contain Ahern information because he created them. *See* ECF No. 33-4 at 38. But the non-disclosure agreement expressly states that all documents "compiled or produced" by an employee "pertaining to the business of [Ahern] and/or the [c]ustomers . . . shall be and remain the property of the [c]ompany." ECF No. 33-1 at 7. So I include those documents as ones that must be returned to Ahern.

[45] Ahern argues that Young's counsel was not at liberty to determine that the information in Young's possession was not "confidential" and therefore not subject to the temporary restraining order. ECF No. 33 at 9–10; ECF No. 40 at 3–4. But what constitutes "confidential information" is a legal determination that attorneys may—and often do—dispute.

[46] ECF No. 16.

[47] *See* ECF No. 39–1.

10

That recommendation has not yet been adopted or rejected by the presiding district judge. "The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court."[48] This rule "is not a rigid or inflexible rule to be mechanically applied"[49] but should be used when it serves the court's "economy, consistency, and comity."[50] Courts often decline to apply the first-to-file rule when the first case is filed in direct contradiction of a valid forum-selection clause.[51]

Young contends that I should exercise my discretion to transfer, stay, or dismiss this case "in the interests of efficiency and judicial economy" under the first-to-file rule.[52] I decline to exercise that discretion here. The agreement at issue contains a forum-selection clause requiring "[a]ny and all disputes arising from this [a]greement [to] be heard and resolved solely and exclusively by a [c]ourt in the [s]tate of Nevada."[53] Generally, "[a] contractual forum[-]selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'"[54] And while Young contends that North

---

[48] *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015).

[49] *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

[50] *Kohn*, 787 F.3d at 1240 (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)).

[51] *See, e.g.*, *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006) (overturning application of first-to-file rule where first-filed case was brought in a jurisdiction other than the one the relevant forum-selection clause mandated); *Universal Operations Risk Mgmt., LLC v. Glob. Rescue LLC*, 2012 WL 2792444, at *6 (N.D. Cal. July 9, 2012) (refusing to apply first-to-file rule where first-filed case was brought in jurisdiction other than the one mandated by the forum-selection clause).

[52] ECF No. 16 at 5 (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).

[53] ECF No. 33-1 at 12.

[54] *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989) (quoting *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972)).

11

Carolina law and public policy void that forum-selection clause,[55] North Carolina courts have repeatedly held that "the validity of a forum[-]selection clause is to be determined under federal law," and "the fact that a forum[-]selection clause violate[s] the public policy of [a] forum is just a factor in a multi-factor analys[i]s."[56] Particularly in light of the North Carolina magistrate judge's recommendation that Young's North Carolina case be transferred here, I do not find good cause to stay this case pending a final determination by the district judge in that case. I therefore deny Young's motion to stay this case.

## Conclusion

IT IS THEREFORE ORDERED that Ahern's emergency motion for a preliminary injunction **[ECF No. 6] is GRANTED in part**:

- On or before February 11, 2022, Young must turn over to Ahern, and cease any use of, Ahern's documents that contain information concerning Ahern's customers and pricing, as well as any other confidential information he is in possession of or has access to. Young is enjoined and prohibited from using or divulging any of Ahern's confidential or trade secret information.

- The emergency motion for a preliminary injunction is **DENIED in all other respects**.

---

[55] ECF No. 16 at 5 (citing N.C. Gen. Stat. § 22B-3).

[56] *James C. Greene Co. v. Great American E & S Ins. Co.*, 321 F. Supp. 2d 717, 721 (W.D.N.C 2004) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)); *see also JML Energy Resources, LLC v. Ryder Truck Rental, Inc.*, 2021 WL 1206811, at *2 (W.D.N.C. Mar. 30, 2021) ("[T]his Court has made it clear [that N.C. Gen Stat. § 22B-3] is only one of the factors to be considered when evaluating reasonableness for a forum[-]selection clause, and does not otherwise render a freely negotiated forum[-]selection clause unenforceable."); *Peltier v. Mathis*, 2016 WL 4386091, at *6 (W.D.N.C. June 23, 2016) (noting that "[f]ederal [c]ourts in North Carolina routinely enforce forum[-]selection clauses despite the existence of Section 22B-3").

IT IS FURTHER ORDERED that Young's emergency motion to dissolve or modify the temporary restraining order **[ECF No. 14] is GRANTED**.  The TRO is vacated.

IT IS FURTHER ORDERED that Young's emergency motion to stay this case **[ECF No. 16] is DENIED**.

IT IS FURTHER ORDERED that Ahern's motion for an order to show cause **[ECF No. 40] is DENIED as moot**.

IT IS FURTHER ORDERED that Ahern's motions to seal **[ECF Nos. 34, 41] are GRANTED**.

_____
U.S. District Judge Jennifer A. Dorsey
February 7, 2022